## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0183

STATE OF LOUISIANA

VERSUS

MORGAN RATLEY

Judgment Rendered: **SEP 15 2023**

* * * * *

On Appeal from the
Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
No. 589242 Section "D"

The Honorable Christopher J. Boudreaux, Judge Presiding

* * * * *

Kristine M. Russell
District Attorney
Joseph S. Soignet
Jason L. Chatagnier
Assistant District Attorneys
Thibodaux, Louisiana

Attorneys for Appellee
State of Louisiana

Jane L. Beebe
Addis, Louisiana

Attorney for Appellant
Morgan Ratley

Morgan Ratley
St. Gabriel, Louisiana

In Proper Person

* * * * *

BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.

**HOLDRIDGE, J.**

The defendant, Morgan Ratley, was charged by grand jury indictment with first degree rape (count I), a violation of La. R.S. 14:42; and sexual battery (count II), a violation of La. R.S. 14:43.1. He pled not guilty on both counts. Following a jury trial, he was found guilty as charged on both counts by unanimous verdicts. On count I, he was sentenced to life imprisonment at hard labor without benefit of parole. On count II, he was sentenced to a concurrent term of ten years at hard labor without benefit of parole.[1] The defendant now appeals, filing a counseled and a pro se brief. In both briefs, he argues the trial court erred in admitting hearsay evidence. For the following reasons, we affirm the convictions and sentences.

## FACTS

The victim, L.C.,[2] testified that the defendant was her mother's boyfriend and moved into their home in Cut Off in May of 2017. Beginning in September of 2018, when L.C. was thirteen years old, the defendant started touching her breasts when her mother was in the shower. According to L.C., between September of 2018 and July of 2019, the defendant also repeatedly touched her buttocks and vagina with his penis and his mouth. L.C. further testified that the defendant would get on top of her when she was lying on the couch, would pin her arms with his legs, would put his penis in her mouth, and "[s]ometimes ... release[.]".

On July 12, 2019, L.C. heard a scream when she was in the shower. She discovered that the defendant was tying her mother to a chair in the bedroom. L.C. testified that once the defendant restrained her mother, he "was able to do whatever he

---

[1] The court noted the sentences were not eligible for diminution for good behavior. See La. R.S. 15:541(24)(a) & 15:571.3(D)(2).

[2] We reference the victim and her mother by their initials. See La. R.S. 46:1844(W); **State v. Mangrum**, 2020-0243 (La. App. 1st Cir. 2/22/21), 321 So.3d 986, 989 n.1, writ denied, 2021-00401 (La. 10/01/21), 324 So.3d 1050.

2

wanted to [L.C.]." The defendant made her perform oral sex on him, and he performed oral sex on her. He also penetrated her vagina with his fingers and his penis. On July 14, 2019, L.C. and her mother escaped from the defendant after he fell asleep.

L.C. identified ten pictures on the defendant's cell phone which depicted her naked. She identified another nineteen images of herself on the defendant's Samsung phone, including a June 22, 2019 image showing L.C.'s shirt raised, exposing her breasts, and a June 28, 2019 image showing a penis in L.C.'s mouth. According to L.C., she did not immediately report the sexual abuse because the defendant threatened to kidnap and sexually assault her best friend. The defendant also threatened to hurt L.C.'s mother and her dog. L.C. testified she was terrified for her own life and the lives of those she cared about.

Elizabeth Surratt Hamilton was accepted by the court as an expert in DNA analysis. She testified that, to a statistical certainty, the defendant could not be excluded as the minor contributor of DNA in the DNA profiles obtained from the sperm fractions of internal and external anal swabs taken from L.C.

The defendant testified that he moved in with L.C. and her mother in May of 2017. He stated he touched L.C.'s breasts after she agreed to let him do so if he bought her a phone. He stated he had seen L.C. naked, had touched her under her clothes, had given her oral sex, and had received oral sex from her. He further admitted he had ejaculated in her mouth. He denied pinning L.C. down or threatening to hurt her or her mother if L.C. refused to comply with his demands. He admitted he penetrated L.C. with his finger, but denied penetrating her with his penis. He did not dispute, however, that an internal anal swab indicated his semen was recovered from L.C.'s anus.

3

## HEARSAY EVIDENCE

In his counseled and pro se assignments of error, the defendant contends the trial court erred in admitting hearsay evidence. Relying on **State v. Hearold**, 603 So.2d 731, 738-39 (La. 1992), he argues the testimony of Deputy Cheramie concerning what D.C. told him was hearsay.

Lafourche Parish Sheriff's Office Deputy Chuck Cheramie testified that in July of 2019, he responded to a complaint involving D.C. and L.C. The defense objected to hearsay when the State asked Deputy Cheramie how he was notified about the complaint. The State argued Deputy Cheramie was setting out the information he received in order to explain "this is why I did what I did in ... connection with ... that complaint." The trial court sustained the objection and instructed the State to "keep it very general" and not present any details to the jury. Thereafter, the following colloquy occurred:

> [STATE]: Deputy Cheramie, without going into ... detail about the information you ... learned, what was the ... nature of the complaint?
>
> [CHERAMIE]: Basically, the call came out that ... [D.C.] stated that she was held against her will, and her daughter was sexually abused.
>
> [STATE]: What do you do when you have that information? Do you start ... an investigation?
>
> [CHERAMIE]: We meet with the [complainant], and hear what's going on; and then, we determine the best course of action – to take.

Deputy Cheramie's testimony was not offered for the truth of the matter asserted, *i.e.*, that D.C. was held against her will and that L.C. was sexually abused, but rather to explain how the investigation in this matter unfolded. Thus, the challenged testimony was not hearsay. See La. Code Evid. art. 801(C); **State v. Griffin**, 2005-1953R (La. App. 1st Cir. 9/14/07), 2007 WL 2685432, *6-7 (unpublished). There is no indication that Deputy Cheramie's testimony concerning what D.C. told him was offered to prejudice the defendant. Such testimonial evidence

4

of a police officer is admitted not to prove the truth of the out-of-court statements, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer. See **Mitchell**, 2016-0834 (La. App. 1st Cir. 9/21/17), 231 So.3d 710, 724, writ denied, 2017-1890 (La. 8/31/18), 251 So.3d 410; **State v. Morgan**, 2009-1745 (La. App. 1st Cir. 4/1/10), 2010 WL 1253367, *3 (unpublished) ("[u]nder certain circumstances, the testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of a police investigation and the steps leading to the defendant's arrest."); **Griffin**, 2007 WL 2685432 at *6.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. Code Evid. art. 801(C). If such a statement is offered for any other purpose, however, then the statement is not hearsay. **Griffin**, 2007 WL 2685432, at *6. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. Code Evid. art. 802; **Mitchell**, 231 So.3d at 724.

**Hearold** involved convictions for possession of methamphetamine with intent to distribute and conspiracy to possess methamphetamine with intent to distribute. **Hearold**, 603 So.2d at 733-34. At trial, over objections, police officers testified that the passenger in the car with the defendant told them at the scene, "he did have a methamphetamine problem[,] but he wasn't the one dealing tonight," and that they had "received information that [the passenger] and [defendant] were involved in narcotics dealings in the eastern part of the parish[.]" **Hearold**, 603 So.2d at 733.

The court in **Hearold** noted, as to any exception to the hearsay rule based on an officer's testimony regarding information which immediately prompted an investigation, the issue of relevancy was significantly interrelated with the hearsay issue, to-wit:

5

> Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused. ... The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.

**Hearold**, 603 So.2d at 737-38.

The court in **Hearold** held that the first statement, concerning who was "dealing that night," was inadmissible hearsay that did not qualify under the co-conspirator exception, and thus, should not have been presented to the jury. **Hearold**, 603 So.2d at 738. In regard to the second statement, the court held that the reason why the officer began his investigation of the defendant was totally irrelevant to the issue of the defendant's guilt of any of the essential elements of the crime and introduction of the statement deprived the jury of the "opportunity to evaluate the out-of-court declarant whose credibility may have been substantially less than that of a police officer testifying in full uniform." **Id.** Lastly, the court noted the officer's testimony went far beyond the scope of the question about the substance of the investigation. **Id.**

Our review of the record convinces us that **Hearold** is distinguishable. In the instant case, Deputy Cheramie limited his response to his investigation of the instant offenses without mentioning any other criminal activity in which the defendant may have been involved. Further, Deputy Cheramie's response did not involve a direct assertion of criminal activity against the defendant. Lastly, the explanation did not deprive the jury of the opportunity to evaluate the out-of-court declarant because D.C. and L.C. both testified at trial to establish all facts contained in the response.[3]

These assignments of error are without merit.

---

[3] Because we find that Deputy Cheramie's testimony was not hearsay, we pretermit discussion of the admittance of such testimony as being harmless error.

6

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of the defendant, Morgan Ratley.

**CONVICTIONS AND SENTENCES AFFIRMED.**